Please rise. This court is now in session. May be seated. The clerk will call the next case. 314-427. The people of the state of Illinois, I believe, I wish you tonight a year's worth of energy, wages, and health. Ms. Boza, you may proceed. Thank you, Your Honor. May it please the Court, Your Honors, Counsel, I'm Emily Boza, Assistant Appellate Defender from the Office of the State Appellate Defender, representing Aaron Williams in this case. Your Honors, there are two issues in today's case. First, that the state failed to prove beyond a reasonable doubt that Mr. Williams did not act in self-defense. And second, that the trial court erred when it shackled Mr. Williams without first determining that restraints were necessary. I'm actually going to be starting with this second issue and then, time permitting, I'll move on to the reasonable doubt argument. Your Honors, it's clear in this case that Mr. Williams was shackled without a booze hearing. Defense counsel asked for Mr. Williams' handcuffs and shackles to be removed, and the trial court responded, handcuffs will be removed, shackles will remain on. That's it. There was absolutely no analysis, no questions asked about whether these restraints were actually necessary. And the law in this area is straightforward. Restraining a defendant without a booze hearing, without determining that the restraints are actually necessary, is a violation of due process. And, in fact, the state hasn't even challenged that this was, in fact, error. Rather, they argue that the evidence in this case was overwhelming and, thus, Mr. Williams has forfeited the issue. But the evidence in this case isn't overwhelming. This was a self-defense case. It centered on two witnesses, Mr. Williams and Mr. Lipscomb, who is the complainant. They were the only two witnesses that testified that were actually in the car. Each alleged that the other was the aggressor. So Mr. Lipscomb maintained that Mr. Williams attacked him, and Mr. Williams has maintained, actually, from the beginning, that Mr. Lipscomb reached into the front of the car and he stabbed him in self-defense. This was a closely balanced case. It was a credibility contest. At a minimum, it was a credibility contest. And their competing versions make this a closely balanced case. But, actually, looking at the broader picture, the objective facts actually tip the balance in favor of Mr. Williams. Mr. Williams has never denied that he stabbed the complainant. From the beginning, he has maintained that he acted in self-defense. This is what he told the police when he called them after they showed up. This is what he told the detectives when they interviewed him. And this is what he testified to at trial. The only evidence the state presented to counter Mr. Williams' claim of self-defense was the complainant, Mr. Lipscomb, whose testimony was, at its core, absolutely improbable. And, again, the objective facts in this case actually sway and support Mr. Williams' account. There are three things I would like to focus on. First, the car. It was Mr. Williams' car. Mr. Williams was driving it. And it's undisputed in this case that Mr. Williams rolled out of a moving car because he was afraid that Mr. Lipscomb was trying to rob him. That's undisputed. And it's also undisputed that Mr. Lipscomb didn't wait for Mr. Williams after he rolled out of the car. He drove off in a car that wasn't his. Second, the police. Mr. Williams was the one who asked for the police to be contacted. Mr. Williams was the one who actually directed the police to Mr. Lipscomb. And finally, and this, I think, is the most important, the blood in this case. Mr. Williams testified and has maintained that he stabbed Mr. Lipscomb because Mr. Lipscomb reached from the back seat up into the driver's seat and tried to grab the steering wheel. The only blood in the car is up near the steering wheel. The only blood in the car corroborates Mr. Williams' account. It corroborates his account of self-defense. And again, the only evidence that the state presented to counter this self-defense claim was the improbable testimony of the complainant. This testimony could not carry the state's burden. Even looking at the evidence in the light most favorable to the state, the complainant testified that he was stabbed in the back seat, that he was stabbed while sitting in the back seat. He didn't reach forward until after he had been stabbed. But again, there's absolutely no blood in the back seat, and that's an important fact to focus on. Even taking Mr. Lipscomb's testimony as true, looking at it in the light most favorable to the state, it's not supported by the evidence in this case. As such, the state failed to meet their burden to prove beyond a reasonable doubt that Mr. Williams did not act in self-defense. And Mr. Williams asked this honorable court to reverse his conviction outright. In the alternative, Mr. Williams asked that this court reverse in remand for a new trial as the trial court committed error in shackling him without first determining that such restraints were necessary. Thank you. Thank you, Ms. Koza. Mr. Leonard? May it please the court, counsel, I will address the shackling issue first. The defendant admits that the issue was forfeited, but argues that this court should review the issue as plain air under the closely balanced prong. Defense counsel states that the evidence is closely balanced simply because we have the victim testifying to one story and the defendant testifying to another story. But this court rejected that analysis in their case of People v. Sebi. In that decision, this court said you need to take a qualitative rather than a quantitative common sense assessment of the evidence to determine if the evidence is closely balanced. Again, the standard of review here is whether any rational trier effect could have found the elements of the offense beyond a reasonable doubt, considering the evidence in the light most favorable to the people. We have two conflicting testimonies. But aren't you refusing a reasonable doubt during the first issue with the evidence eluded on the second issue? The second issue, the defendant… Yes. Yes, I disagree because it's not closely balanced evidence. If you take this court's analysis in Sebi, which I just stated, taking the qualitative rather than quantitative you look at the… In that case, I mean, that involved a police officer's testimony versus the defendant's testimony. So you're feeling that that extends anytime there's a, you know, he said, she said, or in this case he said, he said, argument about something? Yes, well, you have to look at the circumstances because here we have the victim. He has nothing to lie about. But we have the defendant here who's facing a prison sentence perhaps. He has a reason to lie. And again, if you look at the facts, the defendant's testimony is not really credible. The victim here testified that he told the defendant that he would give him gas money if the defendant drove him to his girlfriend's house. The defendant did that. The victim went up to the house, got the money. The defendant drove back to the gas station. The victim not only filled up the defendant's gas tank, he gave him another $20 for the ride. So how is the defendant's testimony that he believed that this victim was going to rob him when the defendant received money? Why wouldn't the victim have given him money if he was just going to rob him anyway? So taking this qualitative approach, I believe that the evidence is not closely balanced. Mr. Lewis, I spent a lot of time getting ready for this case trying to figure out physically how this all happened. It seems almost impossible to me how this could have happened the way that the victim described it as happening. Yes. Do we take that into account as well? Well, I'm glad you brought up that point because the victim testified that, the defendant was driving. While he was driving, the defendant turned around, stabbed the victim, maintained control of the car, and then when the victim reached forward, the defendant jumped out of the car after it slowed down. But the defendant told the police officer when he was being interviewed, let me quote it, he told Detective Grebel, the defendant, he grabbed another knife from the door between the driver's seat and the door with his left hand and turned completely around when the vehicle was in motion and stabbed Mr. Lipscomb in the right arm. That is what the detective testified to what the defendant had told him. So we have the defendant telling the police officer the same thing that the victim told the police officer. So I believe between those two accounts, they match and we don't know what happened. We just know what the victim and the defendant said and their testimony here, anyway, corroborates what happened in the vehicle. How did the victim get to the front seat and gain control of the car? Well, the victim testified that he reached forward after the defendant jumped out of the car and grabbed the steering wheel. There's no evidence how he got into the front seat. It'd be just speculation, but he probably jumped over the front seat because the car was still moving and he had to say he had to get into the front seat, grab the steering wheel, and he stepped on the brake to stop the vehicle. So with those two accounts, I don't see why the evidence is not... Well, the defendant was no longer in the car at the time that that happened, or at least in theory happened. Right, yeah, so we have corroborating evidence for both, or testimony anyway, from the police officer, what the defendant told him and what the victim told the police officer. So we really don't know, but putting those two pieces of evidence together, that's guilt beyond a reasonable doubt that the defendant stabbed the victim in the way that the victim testified to. This may be a strength question, a concern, or the issue, or the second issue, but why was he shackled? Why was he shackled? Yeah, we don't know. We don't know why he was shackled, but as defense counsel stated, the defendant's lawyer asked that he be unshackled. He had handcuffs on and leg irons on. The trial judge made the decision, you can remove the handcuffs, but the leg irons will stay on. We don't know what the trial judge's reasoning was, because he didn't state it on the record. We don't know otherwise. Because there was no boost hearing. Because there was no boost hearing. And that leads me to the next, I guess, point, is if you find that this was not forfeited, what's the defendant's remedy? I would argue send it back for a boost hearing, because obviously the trial judge had some reason for telling the defendant he could not have the leg irons removed. This wasn't a blanket policy that the defendants all be shackled. It was the trial judge's decision. So if you don't have any more questions, I'd ask that you affirm the defendant's conviction. Okay, Mr. Larkin. Yes, I have just a few points, Your Honors. First of all, this case is closely balanced. Taking a qualitative assessment of the evidence, the only two people in that car were Mr. Williams and the complainant. All we have is their testimony. This case came down to their credibility. Their credibility was key in this case. And that is looking at the quality of the evidence, a qualitative assessment of the evidence, shows that it was closely balanced. Each one gave their own version of the story. At a very minimum, the evidence in this case was closely balanced. Second, counsel suggested that the victim didn't really have any reason to lie in this case about what had happened, but that Mr. Williams did. Mr. Williams has maintained, again, from the beginning, that he acted in self-defense. This is what he told the cops initially, and it's what he told the detectives. Furthermore, counsel also mentioned that Mr. Williams told the detectives in his interview that he turned completely around and that this somehow corroborated the complainant's testimony. We actually don't know if that is actually true. So Mr. Williams gave two statements. He gave an oral statement and he gave a written statement. The detective testified that Mr. Williams said during the oral statement that he admitted that he turned completely around. There's nothing about this in the written statement. The written statement doesn't mention Mr. Williams turning around, and this written statement was presumably reviewed. He wasn't asked to add anything else. The written statement, again, says absolutely nothing about him turning around. So all we have is the detective's testimony. The interview wasn't video recorded. It wasn't audio recorded. All we have is the detective's testimony. Additionally, finally, counsel argued that the remedy for the Shackling error should be to remand for a booze hearing. That is actually contrary to most of the law, with the exception of two cases ahead of this district. The Shackling isn't the default. The default is no shackles. And in this case, as in almost every other case in Illinois, the remedy for a due process violation such as this is to send it back for a new trial. There's absolutely nothing on this record, nothing at all, to suggest that any of the booze factors were present or that the judge even considered them. The judge's response was cursory. Handcuffs will be removed. Shackles will stay on. It does suggest a blanket policy. There was no thought. It was an almost automatic response. And for those reasons, we ask that this honorable court either reverse Mr. Williams' conviction outright or, in the alternative, reverse and remand for a new trial. Is he out now? He is out now. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And right now, we'll stand in a brief recess for comments. I'm sorry. This court stands in recess.